UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| MARQUISE LESJUAN HARRIS, # 781877, | ) ) ) | |
| Petitioner, | ) ) | Case No. 1:14-cv-852 |
| v. | ) ) | Honorable Paul L. Maloney |
| SHERRY BURT, | ) ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) ) ) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner's convictions stem from the armed ambush that petitioner and his brothers Chey Harris[1] and Marcellous Bennett[2] carried out in June 2009 against Brady Middleton, a pizza deliver driver.  On September 9, 2010, a Kent County Circuit Court jury convicted petitioner of armed robbery, Mich. Comp. Laws § 750.529;

---

[1]Chey Harris is in the custody of the Michigan Department of Corrections (MDOC) on the basis of his plea-based convictions for carjacking, unlawful imprisonment, and armed robbery stemming from his role in the June 2009 robbery. On September 15, 2010, Chey Harris was sentenced to 10 to 15 years' imprisonment on his unlawful imprisonment conviction and 15 to 30 years' imprisonment on his carjacking and armed robbery convictions.  *See* http://mdocweb.state.mi.us/OTIS/otis2profile.aspx?mdocNumber=682033 (last visited April 19, 2017).

[2]Marcellous Bennett is in the custody of the MDOC on the basis of his plea-based convictions for the June 2009 armed robbery and carrying concealed weapons.  On April 28, 2011, Mr. Bennett was sentenced to 11 to 30 years' imprisonment on his armed robbery conviction and 2 to 5 year's imprisonment on his weapons conviction.  *See*  http://mdocweb.state.mi.us/OTIS/otis2profile.aspx?mdocNumber=799595  (last visited April 19, 2017).

carrying a concealed weapon, Mich. Comp. Laws § 750.227(2); receiving and concealing a stolen motor vehicle, Mich. Comp. Laws § 750.535(7); carjacking, Mich. Comp. Laws § 750.529a; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  The trial court sentenced petitioner to prison terms of fifteen to thirty years for armed robbery, two to five years for carrying a concealed weapon, two to five years for receiving and concealing a stolen motor vehicle, fifteen to thirty years for carjacking, and two years for possession of a firearm during the commission of a felony.

After unsuccessful attempts to overturn his convictions in Michigan's courts, petitioner filed his federal habeas corpus petition.  He asks this Court to overturn his convictions on grounds rejected by Michigan's courts:

I.     Petitioner's rights under the Fourteenth Amendment's Due Process Clause were violated because the evidence at trial was insufficient to support his criminal convictions.

II.    Petitioner's rights under the Confrontation Clause were violated by the use of Chey Harris's preliminary examination testimony at trial.

III.   Petitioner's rights under the Fourteenth Amendment's Due Process Clause were violated by prosecutorial misconduct in using "bad acts" evidence, or alternatively a violation of petitioner's right to the effective assistance of counsel when his attorney failed to object.

IV.    Petitioner's Sixth Amendment right to effective assistance of counsel was violated when his attorney failed to object to the introduction into evidence of a prison letter and testimony regarding a jail conversation.

     V.     Petitioner's Sixth Amendment right to effective assistance of counsel was violated when his appellate attorney failed to raise "obvious and significant" issues on direct appeal.[3]

(Amended Petition, ECF No. 6, PageID.99-112).

On June 16, 2015, respondent filed her answer to the amended petition. Respondent argues that the petition should be denied for lack of merit. (Answer at 27-35, 39-47, 49-58, 60-70, ECF No. 11, PageID.149-57,161-69, 171-80, 182-92). She also argues that Grounds II, III, IV are barred by procedural defaults and petitioner has not established grounds to overcome those defaults. (*Id.* at 9, 36-39, 48-49, 59, 70-72, PageID.131, 158-61, 170-71, 181, 192-94).

District Judge Paul L. Maloney has referred the matter to me for all purposes, including the issuance of a report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief.[4]  I recommend that the petition be denied.

----

[3]Petitioner's invocation of Michigan's constitution in Ground V (ECF No. 6, PageID.112) is ignored herein because federal habeas corpus relief is available "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner's unexhausted claims of ineffective assistance of appellate counsel are addressed at the end of Section V.

[4]Both the Supreme Court and the Sixth Circuit have indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014). In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

### Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## **Proposed Findings of Fact**

## A.    District Court Proceedings

Petitioner was charged with five felonies:  armed robbery, carrying a concealed weapon, receiving and concealing a stolen motor vehicle, carjacking, and possession of a firearm during the commission of a felony.  (ECF No. 12-5, PageID.233-34).  He received a preliminary examination in district court.  (Preliminary Examination, ECF No. 12-2, 12-3).  Judge Steven Timmers heard testimony from the victim, Brady Middleton.  (ECF No. 12-2, PageID.214-17).  Petitioner's brother, Chey Harris, also testified.  Chey Harris testified that he was twenty-one years old and that petitioner and Marcellous Bennett were his brothers.  (*Id.* at PageID.217).  He testified that he was in custody because he had entered a guilty plea stemming from his role in the June 2009 armed robbery of Brady Middleton.  (*Id.*).  Chey Harris testified that he had told Judge Buth that his siblings were involved in the armed robbery.[5]  He refused to answer when asked which two siblings had been involved in the robbery.  (*Id.* at PageID.217-19).  The transcript shows that Marcellous Bennett had been held in Chicago on an armed robbery charge, but he had been brought back to Kent County to testify at petitioner's preliminary examination.  Bennett refused to testify.  (*Id.* at PageID.219).

The preliminary examination continued on May 26, 2010.  (ECF No. 12-3).  Judge Timmers received testimony indicating that petitioner had three siblings: Chey

---

[5]During his own plea hearing, Chey Harris had "responded affirmatively to the Court's specific questions that the two persons involved were his brother Marcell[o]us Bennett and his brother Marquise Harris."  (ECF No. 12-9, PageID.391).

Harris, Marcellous Bennett, and Jamal Bennett.  Jamal Bennett could not have been a participant in the crimes charged because he was already in custody on the night Brady Middleton was attacked.  (*Id.* at PageID.226-27).  Judge Timmers bound over petitioner for trial in circuit court on all charges.  Among other things, Judge Timmers observed that "Mr. Chey Harris, testified that he had already told Judge Buth downtown when he did his plea that his siblings were involved.  And now we realize that there are two siblings that are left in town, one of them being Marquise Harris and the other being Mr. Bennett.  Three subjects were found in the car, two fled, and the remaining person there was Chey Harris.  There's a handgun with the defendant's print on it.  I think it's no great jump of logic to figure out who those two other people were in the car, and certainly I think there's probable cause to believe that the defendant here, Marquise Harris, was in that vehicle and aided, at least aided, in all five of these counts, and I'll accordingly bind him over on those five counts."  (ECF No. 12-3, PageID.227).

### B.    Circuit Court Proceedings

On July 19, 2010, Judge George Buth conducted a hearing.  During this hearing, the prosecutor formally advised defense counsel that he intended to offer evidence that petitioner had been involved a similar armed robbery of a food delivery man.  (ECF No. 12-4, PageID.230).

Petitioner's trial began on September 8, 2010, and it concluded on September 9, 2010, with the jury's verdict finding him guilty on all five felony charges. (Trial Transcripts (TT I-TT II), ECF No. 12-5, 12-6).

-8-

Brady Middleton testified that on June 15, 2009, and into the early morning hours of June 16, 2009, he was working as a pizza delivery driver.  (TT I, 96-97, Page ID.256-57).  An order had been placed in the name of John Harris late in the evening on June 15th.  Brady Middleton was in the process of delivering that order around midnight.  He parked his 1997 green Honda Accord 4-door, and then carried the items that had been ordered up to the apartment number that he had been given.  When Middleton pressed the door buzzer, he heard a gun cock.  He was then attacked by three African-American men.  The tallest of these men, took the butt end of his pistol and struck Brady Middleton's head.  (TT I, 97-100, PageID.257).  Middleton  was knocked to the ground.  The tall man who had hit Middleton then put the gun to Middleton's head, told him that if he moved or made a sound he would be killed, and demanded money.  Brady Middleton had $17.  The man took what little money Brady Middleton had, then took his telephone and car keys.  The tall man ordered Middleton to get up on his feet and walked him at gunpoint to a wooded area, told him to get down on his knees, and indicated that he was going to kill Middleton.  The three assailants made their way to Middleton's car, but kept a gun pointed at him.

After they left in Middleton's car, he immediately sought help at one of the apartments.  A resident allowed Middleton to use his phone to call 911.  Within minutes there were multiple police cars at the scene.  Brady Middleton told the police what had happened.  He was then transported to the hospital to receive emergency medical attention.  The gash near Middleton's left eyebrow where he had been pistol-whipped required 64 stitches.  Through the date of trial, Brady Middleton continued

to require physical therapy for whiplash and headaches, as well as weekly psychological counseling.  (TT I, 100-13, PageID.257-61).

Police circulated a description of the stolen vehicle, and, within minutes, a matching vehicle had been spotted and it was being followed by Officer Michelle Ritzema.  Before backup units could converge, the driver of the stolen vehicle stopped abruptly.  Officer Ritzema exited her patrol car, drew her firearm, and ordered the occupants of the vehicle not to move.  The three African-American men inside the car did not heed her orders.  Two of the men got out of the car.  Officer Ritzema ordered the men to get down on the ground.  They did not comply.  Both men ran away as soon as another police vehicle approached and illuminated them with his spotlight.  A third occupant, Chey Harris, stayed in the vehicle and he was apprehended.  (TT II, 9-30, PageID.277-82).

Officers Gene Tobin and Case Weston responded to Officer Ritzema's call for backup.  (TT II, 26-36, 54-56, PageID.281-83, 288).  Officer Weston exited the patrol car and chased the taller suspect.  Weston lost contact with this individual after the suspect climbed over a large privacy fence.  In the area where this suspect had gone over the fence, police found a cell phone, some cash, a high-top tennis shoe, and the magazine portion of a handgun.  Police also found Brady Middleton's cell phone which had been tossed into a backyard pool.  (TT I, 93, 108, PageID.256, 259; TT II, 58-60, PageID.289).

Officer Tobin helped Officer Ritzema secure Chey Harris in handcuffs, then he headed off in pursuit of the shorter of the two suspects who fled, but was unable to

keep up with that individual.  This suspect was wearing a distinct pair of jeans with multi-colored pockets.  Police received information that this suspect was at a residence on 33rd Street.  Marcellous Bennett was taken into custody at that residence.  Police found his distinct pair of jeans on the floor.  Marcellous Bennett is shorter than petitioner.  (TT II, 28-36, 57, 61, 91, 117-21, PageID.281-83, 289, 297, 304-05).

Police recovered a nine millimeter SIG Sauer handgun, a sawed off shotgun, a nine millimeter clip and ammunition, and a pair of latex gloves from inside the stolen vehicle.  (TT I, 89-90, PageID.255; TT II, 24, PageID.280).  Petitioner's fingerprint was on the barrel of the handgun.  (TT I, 75-85, PageID.251-54).

Chey Harris refused to testify.  At the start of the second day of petitioner's trial Chey Harris's attorney appeared in court.  He advised Judge Buth that he had met with Chey Harris that morning and that his client could not bring himself to testify against his brother.  Further, if Chey Harris did take the witness stand at petitioner's trial he would "set himself up for perjury charges" and likely lose whatever benefit his preliminary examination testimony might provide at his upcoming sentencing.  (TT II, 4-5, PageID.275-76).  It was undisputed that Chey Harris was unavailable as a witness, and that he had been subject to cross-examination by petitioner's attorney during petitioner's preliminary examination.  (TT II, 5-8, PageID.276-77).  Chey Harris's preliminary examination testimony was read into the record.  Chey Harris had testified that petitioner and Marcellous Bennett were his brothers.  He had entered a guilty plea to the armed robbery of Brady Middleton.  He testified that his siblings were involved in the armed robbery with him.  He was one of the three occupants of the

stolen vehicle.  (TT II, 37-47, PageID.284-86).  Chey Harris's other sibling, Jamal Bennett, was incarcerated on the night in question and he could not have participated in the armed robbery.  (TT II, 68, 73, 101, PageID.291, 293, 300).

In a letter dated August 18, 2010, addressed to his mother, petitioner asked her to tell Marcellous that "he ain't got nothing to worry.  Dude done got us out of that jam, they ain't got no evidence."  (TT II, 70, PageID.292).  In a monitored jail telephone call, petitioner indicated "Baby Boy" (Chey Harris) had them covered or was going to take the hit for them.  This was consistent with what Chey Harris had stated at petitioner's preliminary examination, that he had time to do and was willing to do it.  (TT II, 71-72, PageID.292).

Detective Greg Garofalo of the Addison Police Department gave brief testimony regarding petitioner's participation in an October 2008 robbery of a deliveryman.  (TT II, 48-53, PageID.286-88).

Petitioner elected to testify.  (TT II, 75-88, 109-15, PageID.293-96, 302-03).  He denied having any involvement in the crimes charged.  He conceded that his fingerprint was on the gun. (TT II, 80-82, PageID.294-95).  He denied indicating in his letters or phone calls that Chey Harris was going to cover up for him.  (TT II, 86, PageID.296).  Petitioner later conceded that he was referring to Chey Harris as the "Dude" who got them out of a jam.  (TT II, 111-12, PageID.302).

After deliberating for just over an hour, the jury returned its verdict finding petitioner guilty of armed robbery, carrying a concealed weapon, receiving and

concealing a stolen motor vehicle, carjacking, and possession of a firearm during the commission of a felony.  (TT II, 154-55, PageID.313).

On October 6, 2010, Judge Buth conducted a hearing and sentenced petitioner as previously indicated.  (ECF No. 12-7; *see also* Judgment of Sentence Commitment to Department of Corrections, ECF No. 12-10, PageID.398).

### C.    Subsequent Proceedings

Petitioner's appellate counsel raised the challenge to the sufficiency of the evidence found in Ground I of the habeas corpus petition.  (ECF No. 12-10, PageID.404).   On December 13, 2011, the Michigan Court of Appeals rejected petitioner's argument that the prosecution failed to provide sufficient evidence to establish his identity as a participant in the crimes and it affirmed petitioner's convictions.  (ECF No. 12-10, PageID.396-97; *see also People v. Harris*, No. 300957, 2011 WL 6250796 (Mich. Ct. App. Dec. 13, 2011)).

Petitioner sought leave to appeal to Michigan's highest court.  He raised the same ground that had been rejected by the Court of Appeals for lack of merit.  (ECF No. 12-11, PageID.435).  On May 21, 2012, the Michigan Supreme Court denied leave to appeal.  (ECF No. 12-11, PageID.433).

On May 13, 2013, petitioner filed a motion for relief from judgment in the trial court.  (ECF No. 12-8, PageID.340-86).  Petitioner raised the arguments now found in Grounds II through V of his amended habeas corpus petition. On July 18, 2013, Judge Buth rejected petitioner's arguments and denied his motion for relief from judgment. (ECF No. 12-9, PageID.389-94).

Petitioner sought leave to appeal in Michigan's appellate courts.  On November 15, 2013, the Michigan Court of Appeals denied petitioner's application for leave to appeal because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  (ECF No. 12-12, PageID.481).  On June 24, 2014, Michigan's highest court denied leave to appeal on the same basis.  (ECF No. 12-13, PageID.567).

On August 12, 2014, petitioner filed his habeas corpus petition.  (ECF No. 1).  On October 15, 2014, petitioner filed his amended habeas corpus petition.  (ECF No. 6).

## Discussion

### I.    Sufficiency of the Evidence to Support Petitioner's Convictions

In Ground I, petitioner argues that the evidence presented at trial was insufficient to support the jury's verdict.  (Amended Petition, ECF No. 6, PageID.100, 110; *see also* Petitioner's Brief at 2-3, ECF No. 14, PageID.587-88; Petitioner's Reply, ECF No. 13, PageID.580).

A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*; *see Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*) (*Jackson v. Virginia* "makes clear that it is the

-14-

responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.").  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *see also Copeland v. Tiseo*, 645 F. App'x 500, 503 (6th Cir. 2016).  Rather, the habeas court is required to examine the evidence supporting the conviction in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n. 16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim.  (ECF No. 12-10, PageID.396-97).  Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential."  *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007).  Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA.  *See Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015); *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008).  Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia. See Eady v. Morgan*, 515 F.3d 587, 601-02 (6th Cir. 2008).  Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor."  *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007).  This standard presents a "nearly insurmountable hurdle" for the habeas petitioner.  *Davis v. Lafler*, 658 F.3d at 534.

"Adding to this extremely high bar are the stringent and limiting standards of AEDPA."  *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979).  In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993).  Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.  Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *see Hill v. Mitchell*, 842 F.3d 910, 933-34 (6th Cir. 2016).

The Michigan Court of Appeals held that the evidence at trial was sufficient to support the jury's verdict finding petitioner guilty of armed robbery, carrying a concealed weapon, receiving and concealing a stolen motor vehicle, carjacking, and possession of a firearm during the commission of a felony.  (ECF No. 12-10, PageID.396-97).

Habeas corpus review does not involve re-weighing the evidence, re-evaluating the credibility of witnesses, or substituting this Court's judgment for that of the jury.

-16-

*See parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (*per curiam*); *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (*per curiam*).  Here, the Michigan Court of Appeals articulated the appropriate standard under *Jackson v. Virginia*, citing state cases adopting this standard.  The decision of the Michigan Court of Appeals finding that there was sufficient evidence to support the jury's verdict finding petitioner guilty of on all five felony charges was not an unreasonable application of the *Jackson v. Virginia* standard.  28 U.S.C. § 2254(d)(1).

## II.    Confrontation Clause

In Ground II, petitioner argues that the trial court violated his constitutional rights when it permitted the use of Chey Harris's preliminary examination testimony. (Amended Petition, ECF No. 6, PageID. 101, 110-11 ; *see also* Petitioner's Brief at 4-5, ECF No. 14, PageID.589-90; Petitioner's Reply, ECF No. 13, PageID.581).

The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'  [The Supreme Court has] held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004).  In *Crawford*, the Supreme Court divided out-of-court statements into two categories:  those that are "testimonial" and those that are not.  *Id.* at 50-69.  The Court identified testimonial hearsay as the "primary" concern of the Confrontation Clause. *Id.* at 53.  Testimonial out-of-court statements by a witness is barred under the Confrontation Clause, unless (1) the witness was unavailable, and (2) the defendant

had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. *Id.* at 68.

In *California v. Green*, 399 U.S. 149 (1970), the Supreme Court held that there was no Confrontation Clause violation where the witness gave prior testimony at the defendant's preliminary examination and was subject to cross-examination by the defendant's attorney. *Id.* at 151, 158-68.

The trial court rejected petitioner's Confrontation Clause argument, finding that petitioner had an opportunity to effectively cross-examine Chey Harris during the preliminary hearing. There was no Confrontation Clause violation. (ECF No. 12-9, PageID.391).

The Sixth Circuit recognizes that a habeas corpus petitioner faces an uphill battle where, as here, the state court has rejected the petitioner's Confrontation Clause argument based on the petitioner's claim that there was not an adequate opportunity for cross-examination of the witness at the preliminary examination. "If there is room for reasonable debate on the issue, the state courts decision to align itself with one side of the argument is necessarily beyond this court's power to remedy under § 2254, even if it turns out to be wrong." *Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014); *see Al-Timimi v Jackson*, 379 F. App'x. 435, 437-39 (6th Cir. 2010); *accord Miller v. MacLaren*, No. 1:12-cv-117, 2016 WL 7396701, at * 8 (W.D. Mich. Nov. 11, 2016) (collecting cases); *Jones v. Winn*, No. 4:15-cv-12239, 2016 WL 6432696, at * 5 (E.D. Mich. Oct. 31, 2016) ("Because there is 'no clearly established [F]ederal law' within the

-18-

meaning of § 2254(d)(1) contradicting the finding of the state court that cross examination during a preliminary examination hearing satisfies the requirement of Crawford, the court must deny habeas relief on this claim."); *Hurick v. Woods*, No. 2:14-cv-81, 2016 WL 1127971, at * 5 (W.D. Mich. Mar. 23, 2016) ("[P]etitioner 'has failed to identify any Supreme Court precedent supporting his contention that his opportunity to cross-examine [the witness] at his own preliminary hearing was inadequate to satisfy the rigors of the Confrontation Clause' " (quoting *Bauman*, 759 F.3d at 635)).

I find that Ground II does not provide a basis for federal habeas corpus relief. Petitioner has not shown that the state court decision rejecting Ground II "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

### III.    Evidence of Other Bad Acts

Ground III is petitioner's claim of prosecutorial misconduct based on a claim that the prosecutor violated Rule 404(b) of the Michigan Rules of Evidence in offering evidence of petitioner's participation in another robbery of a food delivery person. (Amended Petition, ECF No. 6, PageID.103, 111-12; *see also* Petitioner's Brief at 6-7, ECF No. 14, PageID.591-92).  The trial court judge, not the prosecutor, controls whether proffered evidence will be admitted.

The extraordinary remedy of habeas corpus lies only for a person held in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68 (citations and quotations omitted).  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68; *accord Swarthout v. Cooke*, 562 U.S. 216, 219-21 (2011).

Petitioner has not shown that the admission of this evidence resulted in a federal due process violation.  "A due process claim premised on a mistaken state court evidentiary ruling faces a steep climb.  The kind of foundational unfairness and arbitrariness needed to show that a flawed evidentiary ruling rises to the level of a due

process violation is not a broad category[.]" *Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013).   Garden variety claims that the trial court misapplied Michigan Evidence Rule 404(b) do not "cross the constitutional threshold of due process." *Id.* (citations and quotation omitted).  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *accord Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.

While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates

-21-

due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512; *see also Branion v. MacLaren*, No. 16-2609, slip op. at 3 (6th Cir. Apr. 18, 2017)

The trial court rejected petitioner's argument.  The evidence was properly admitted.  "The evidence was not offered as character or propensity evidence; rather it was offered to show that defendant had a 'scheme, plan, or system' which involved multiple individuals collectively robbing food delivery persons[.]" (ECF No. 12-9, PageID.392).

Petitioner has failed to demonstrate any error in the trial court's decision. Accordingly, it cannot be said that the decision rejecting petitioner's claim was "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

## IV.    Sixth Amendment

### A.    <u>Trial Counsel</u>

In Ground IV, petitioner claims ineffective assistance of trial counsel. (Amended Petition, ECF No. 6, PageID.104-05, 112; *see also* Petitioner's Brief at 7-8, ECF No. 14, PageID.592-93; Petitioner's Reply, ECF No. 13, PageID.582).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of

counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  On the prejudice prong, petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  The trial court applied this standard and held that counsel's performance did not fall below an objective standard of reasonableness and that petitioner had not shown prejudice stemming from his trial attorney's actions.  (ECF No. 12-9, PageID.393).

Because the trial court decided petitioner's claims of ineffective assistance of counsel on their merits, its decision must be afforded deference under AEDPA.  *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington.  See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. at 1375-77; *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015). Petitioner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. at 1376 (quoting

-24-

*Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

Judge Buth rejected petitioner's claims of ineffective assistance of counsel for lack of merit. (ECF No. 12-9, PageID.393). I find that petitioner has not shown that the state-court decision rejecting his claims of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review. 28 U.S.C. § 2254(d)(1).

B.    Appellate Counsel

In Ground V, petitioner claims ineffective assistance of appellate counsel because counsel failed to raise the issues that petitioner later raised in his motion for relief from judgment. (Amended Petition, ECF No. 6, PageID.104-05, 112;*see also* Petitioner's Brief at 9-10, ECF No. 14, PageID.594-95; Petitioner's Reply, ECF No. 13, PageID.582).

Claims of ineffective assistance of appellate counsel are measured under the *Strickland* standards. *See Evitts v. Lucey*, 469 U.S. 387 (1985). The trial court was correct that petitioner did not have a constitutional right to have every nonfrivolous issue raised on appeal. (ECF No. 10-10, PageID.393). Appellate counsel acts within the fair range of professional assistance when counsel chooses not to assert weak or unsupported issues on appeal. *See Smith v. Murray*, 477 U.S. 527, 536 (1986). Tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.

-25-

*See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). " 'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy." *Smith v. Murray*, 477 U.S. at 536 (quoting *Jones v. Barnes*, 463 U.S. at 751-52). Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To overcome the presumption of competence of appellate counsel in these circumstances, petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert. *Id.*; *see Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012). Appellate counsel has no duty to raise meritless issues. *Evitts*, 469 U.S. at 394; *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir. 1993).

As for prejudice, the court focuses on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair," *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), and "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694. Consequently, counsel's failure to raise an issue on appeal is ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005).

Judge Buth held that "none of the issues raised in [petitioner's] motion for relief from judgment ha[d] any legal merit, and accordingly, the outcome of the appeal would

not have been different even if these issues had been briefed in the Court of Appeals. Appellate counsel's failure to raise every conceivable issue does not constitute ineffective assistance of counsel." (ECF No. 12-9, PageID.393). Petitioner suffered no prejudice stemming from his appellate counsel's decision not to raise on direct appeal the meritless issues that petitioner raised in his motion for relief from judgment. I find that the trial court's decision rejecting all petitioner's claims of ineffective assistance of counsel easily withstands scrutiny under the "doubly deferential" standard of review. *See* 28 U.S.C. § 2254(d)(1).

Petitioner's only developed argument with regard to ineffective assistance of appellate counsel is the argument rejected above based on petitioner's claim that appellate counsel was ineffective for failure to raise on direct appeal the issues that petitioner later raised in his motion for relief from judgment. (Petitioner's Brief at 10, ECF No. 14, PageID.595; *see also* ECF No. 12-8, PageID.343, 345, 351, 381-85; ECF No. 12-9, PageID.393). Respondent is correct that the portions of Ground V where petitioner claims that his appellate counsel was ineffective for failing to advise him that he could file a Standard 4 brief and failing to investigate Grounds II through IV are unexhausted. (Answer at 70-72, ECF No. 11, PageID.192-94). However, "An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991); *Claussel v. Olson*, No. 2:16-cv-250, 2016 WL 7155383, at * 7 n.4 (W.D. Mich. Dec. 8,

2016).  Petitioner has not shown that appellate counsel's conduct fell outside the wide range of professionally competent assistance and petitioner suffered no prejudice as a result of the omission of these meritless issues.  I find that petitioner's unexhausted claims of ineffective assistance of appellate counsel do not provide a basis for habeas corpus relief.

## V.    Certificate of Appealability

Should the Court deny the petition, it must determine whether a certificate of appealability should be granted.  28 U.S.C. § 2253(c)(2).  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  529 U.S. at 484.  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits

review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims.  *Id.*

Examining petitioner's claims under the standard in *Slack*, reasonable jurists would not conclude this Court's assessment of petitioner's claims to be debatable or wrong.  Accordingly, I recommend that the Court deny petitioner a certificate of appealability.

## Recommended Disposition

For the foregoing reasons, I recommend that the petition be denied.

Dated:  May 4, 2017                       /s/  Phillip J. Green
                                        United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).